REQUESTED BY: Senator Harry B. Chronister Nebraska State Legislature 1010 State Capitol Lincoln, Nebraska 68509
Dear Senator Chronister:
You have called to our attention the fact that the citizens of the City of West Point, Nebraska, have voted to change from electing the members of their city council at large to electing them by ward.
You further call to our attention provisions of Neb.Rev.Stat. § 5-108 (1982 Supp.) and generally ask our opinion of how this transition should mechanically take place.
We understand that subsequent to your request of this office you and officials of the City of West Point have had conversations with Secretary of State Allen Beermann and his staff and that as a result of these conversations the technical aspects of the mechanical nature of this transition have been resolved to everyone's satisfaction. If our understanding in this regard is incorrect, please let us know.
You also ask our opinion as to the amount of population variance which may be constitutionally permissible in this redistricting. In that regard, you direct our attention to the recent United States Supreme Court decision in Karcherv. Daggett, 51 U.S.L.W. 4853 (June 22, 1983).
While the Karcher, supra, case is no doubt instructive on questions of the validity of congressional reapportionments, we believe the United States Supreme Court's decision in Brown et al. v. Thomson, et al., 51 U.S.L.W. 4883 is controlling. While Karcher, supra, concerned congressional redistricting which is subject to scrutiny under Article I, Section 2 of the United States Constitution,Brown, supra, concerned legislative redistricting which is subject to scrutiny under the Equal Protection Clause of theFourteenth Amendment. The court in Brown, supra, there recognized, as it had in Reynolds v. Sims, 377 U.S. 533, that `it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters.'
More specifically, the United States Supreme Court held that minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under theFourteenth Amendment so as to require these deviations to be justified by the state.
The court held in Brown, supra, `Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under ten percent falls within this category of minor deviations.'
Also as you may know, Neb.Rev.Stat. § 5-108 (1982 Supp.) provides, specifically with reference to the apportionment question you raise, that when such a city votes to elect by district or ward the governing body `shall establish districts substantially equal in population as determined by the most recent federal census.' Therefore, we would be of the opinion that so long as the districts or wards created are substantially equal and do not have population variances in excess of ten percent that any challenge to such apportionment would be unsuccessful.
Finally, you ask our opinion as to whether or not it would be advisable to clarify the current Nebraska statutes with regard to the procedure for accomplishing the mechanics of such a change or to clarify the acceptable population variance. Since you have recently had actual experience with a community attempting to accomplish such a change, we leave to your best judgment as to whether or not this procedure might be clarified by further legislative enactment. With respect to the population variance we suggest that the language currently within Neb.Rev.Stat. § 5-108 (1982 Supp.) is sufficient and adequately instructive.
Sincerely, PAUL L. DOUGLAS Attorney General Terry R. Schaaf Assistant Attorney General